# LIUBOV STANCUNA *v.* VERNON STANCUNA
## (AC 32790)

Bear, Espinosa and Pellegrino, Js.

Argued February 7—officially released May 8, 2012

*John R. Williams*, for the appellant (defendant).

*Leslie I. Jennings-Lax*, for the appellee (plaintiff).

*A. J. Wambolt*, guardian ad litem for the minor children.

*Opinion*

BEAR, J. The defendant, Vernon Stancuna, appeals from certain postjudgment orders entered by the trial court in this dissolution action. Specifically, the defendant claims that the court abused its discretion by (1) permitting the plaintiff, Liubov Stancuna, to travel with the parties' minor children outside of the United States without prior notice to the defendant and (2) requiring that the defendant provide the plaintiff's counsel and the children's guardian ad litem with information relating to court-ordered psychological evaluations. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's claims. At all times relevant to this appeal, the plaintiff was a Russian citizen and the defendant was a citizen of the United States. Additionally, the plaintiff owns property in and maintains significant family ties with Russia. Both parties currently reside in Connecticut.

In 2001, the parties were married in the United States and the marriage produced two children. The parties

were both arrested and referred to the department of children and families on multiple occasions over the course of their marriage, although the incidents resulted in no convictions or substantiations of abuse or neglect. In March, 2004, the parties separated and shared physical custody of the children for several months. In late July, 2004, the defendant took the children to Romania. During that time, the plaintiff's father had a heart attack, and, in August, 2004, she travelled to Russia to be with him. The plaintiff subsequently was prevented from reentering the United States for a period of ten months due to immigration proceedings initiated by the defendant. After the plaintiff was allowed to reenter the United States, the defendant filed an application for an ex parte order of immediate temporary custody of the children, along with an affidavit averring, in part, that he feared that the plaintiff "is going to take the children and go to Russia with them."

The plaintiff thereafter filed a dissolution action, and, on August 22, 2007, the parties' marriage was dissolved. The dissolution orders provided that the parties would maintain joint legal and shared physical custody of the children.

In January, 2009, the plaintiff filed an ex parte motion for temporary modification of custody and supervised visitation. In her motion, the plaintiff stated that the defendant's behavior was becoming increasingly threatening and bizarre. On January 15, 2009, the court granted the plaintiff's ex parte motion.

On January 22, 2009, proceedings relevant to the present matter commenced. Over the next few months, the parties filed numerous motions with the court, few of which are relevant to this appeal. On April 13, 2009, the court ordered a full psychological and custody evaluation. Eventually, the parties agreed that the evaluation would be conducted by Michael Haymes, a board certified forensic psychologist.

Beginning in March, 2010, and continuing through July, 2010, the court heard ten days of evidence and argument on many of the unresolved motions, including the motions filed by the plaintiff concerning international travel and visitation that are the subject of the defendant's appeal. Haymes and the defendant's brother, among others, testified during the postjudgment proceedings. Haymes' court-ordered evaluation of the defendant also was entered into evidence. On July 19, 2010, the plaintiff filed a posttrial brief, and, on August 2, 2010, the defendant likewise filed a posttrial brief.

On September 30, 2010, the court issued a memorandum of decision with respect to several of the postjudgment motions filed by the parties.[1] The court credited Haymes' testimony and noted that the defendant appeared to be suffering from a delusional disorder. The court further found that it would be in the best interests of the children that visitation with the defendant continue to be supervised.

The court ordered, inter alia, sole legal and physical custody of the minor children to the plaintiff. The court also entered an order permitting the plaintiff to travel with the children within and outside of the United States without prior notice to the defendant. The court's orders also provided that, should the defendant seek modification of the supervised visitation order, he would need to consult with a psychologist and to provide authorizations to the plaintiff's attorney and the

---

[1] Specifically, in its September 30, 2010 memorandum of decision, the court resolved the plaintiff's motion for modification of custody and supervised visitation, motion for passports and travel, motion for contempt and motion regarding child support. In addition, the court resolved the defendant's motion for contempt, motion to transfer the case to the Regional Family Trial Docket at Middletown, motion to modify child support and arrearage, motion for legal fees, motion for visitation and motion for a mistrial.

guardian ad litem to access his treatment recommendations and compliance with such recommendations. This appeal followed.

On appeal, the defendant challenges (1) the court's order permitting the plaintiff to travel outside of the United States with the children and (2) the order permitting the guardian ad litem and the plaintiff's attorney access to the defendant's treating professionals and requiring him to execute authorizations allowing such access.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Therefore, to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Demartino* v. *Demartino*, 79 Conn. App. 488, 492–93, 830 A.2d 394 (2003).

I

The defendant first claims that the court "abused its discretion in permitting the [plaintiff], without prior notice, to take the minor children to [Russia] which is not a signatory to the Hague Convention [on the Civil Aspects of International Child Abduction (Hague Convention)], of which she is a citizen, where all of her family reside, and where she owns significant real estate." Specifically, the defendant contends that Russia's status as a nonsignatory country to the Hague Convention's child abduction provisions prevents the court from maintaining jurisdiction and enforcing its custody orders should the plaintiff decide to abscond with the children. In light of Russia's status as a nonsignatory to the relevant portions of the Hague Convention, the defendant further argues that, at the very least, the court's orders should afford the defendant an opportunity to be heard prior to permitting the plaintiff to travel internationally with the children. We are not persuaded.

The court found that permitting the children to travel to Russia with the plaintiff would be in their best interests. Specifically, the court found that the plaintiff "has invested time and money in establishing a home and career in Connecticut. She is taking all the necessary steps to become a United States citizen including paying off debt that rightfully should be paid off by [the defendant]. [The defendant] so far refuses to address his mental disorder. He prefers to engage in multiple litigations rather than pursue gainful employment to help support his children and to get help for himself. It would be unfair in this situation to prevent the [plaintiff] from visiting her family in Russia with the minor children. Although Russia is not a signatory to the Hague Convention and the United States and Russia have no formal agreement on child abductions, it is not in the children's best interests to prevent them from visiting family in

Russia with [the plaintiff]. There's no creditable evidence that she would refuse to return the children [to] the United States. Everything [the plaintiff] has done so far, including making the children available to [the defendant] for his supervised [visitation] and making them available to Dr. Haymes for his evaluations leads this court to the conclusion that she would comply with this court's orders regarding custody and visitation."[2]

The defendant contends that the court abused its discretion in entering its travel orders because, by virtue of her status as a Russian citizen with property interests and family in that country, the plaintiff could decide, at some unspecified future date, to move to Russia with the children. The defendant argues that Russia's status as a nonsignatory to the Hague Convention is relevant because, should the plaintiff decide to relocate the children to Russia permanently, neither the court nor the defendant would have authority to order the children's return. Nonetheless, the defendant stated at oral argument before this court that he was not contending that the plaintiff had the present intent to take the children to Russia permanently.

Clearly, the court considered the best interests of the children in formulating its orders. See General Statutes § 46b-56 (c). Although the defendant makes repeated reference to Russia's failure to ratify the Hague Convention's child abduction provisions, the court specifically found, on the basis of the evidence before it, that the plaintiff does not pose a flight risk.[3] The evidence

---

[2] The court's order modified the original dissolution order, which provided that "[u]nder no circumstances shall the minor children be permitted to travel with either party to a country that has not ratified the Hague Convention or is on the list of countries for which the United States has not accepted accessions."

[3] The plaintiff notes that Russia recently has filed its accession to the Hague Convention's child abduction provisions, although the United States has yet to accept Russia's accession. See Status Table, Convention of 25 October 1980 on the Civil Aspects of International Child Abduction, available at http://www.hcch.net/upload/abductoverview_e.pdf (last visited April 27, 2012).

included testimony from both Haymes and the defendant's brother. Additionally, the court found that the plaintiff has made considerable progress toward United States citizenship and that she has invested significant time and money in establishing a home and career in Connecticut. In light of the foregoing, we conclude that the court did not abuse its discretion in permitting the plaintiff to travel with the minor children to Russia.

Moreover, we conclude that the court did not abuse its discretion in allowing for such travel without advance notice to the defendant. The court specifically noted the defendant's continuing failure "to address his mental disorder" and his preference "to engage in multiple litigations rather than pursue gainful employment to help support his children and to get help for himself," and stated that it would be "unfair in this situation to prevent the [plaintiff] from visiting her family in Russia with the minor children." Additionally, the record amply supports the court's orders of sole legal and physical custody of the minor children to the plaintiff because of, inter alia, the defendant's inability to have a relationship with the plaintiff that would permit communication in any manner between them to enable them to discuss and make decisions about the children. In summary, the defendant's chronic untreated mental health issues; his litigiousness; his failure, refusal or other inability to accept the importance in the children's lives of the plaintiff and her family in Russia; and the history of his behavior toward the plaintiff demonstrate the wisdom of the court in seeking to minimize the necessity of any contact between the parties and to eliminate any requirement that the plaintiff initiate contact or provide information to the defendant.[4]

---

[4] We also note that the orders provide that for travel outside the United States or for travel within the United States exceeding ten days, the plaintiff must inform the defendant and the guardian ad litem within five days after departure of "the departure date, the destination and the return date by way of notice from her attorney."

Accordingly, we conclude that the court did not abuse its discretion in entering the travel orders.

II

The defendant next claims that the court "abused its discretion in granting the plaintiff's attorney and the guardian ad litem unrestricted access to all mental health professionals treating the defendant and to the treatment records of such professionals and further ordering the defendant to execute releases and authorizations permitting such unrestricted disclosures of privileged communications and evaluations." We disagree.

The court's order provides in relevant part: "Before the court will consider unsupervised visitation with the minor children, the [defendant] must engage the services of an experienced psychotherapist and psychopharmacologist approved by the [guardian ad litem], each of whom has had training in managing and treating individuals with delusional disorders, and comply with their recommendations for a period of at least [six] consecutive months. The [defendant] also must submit to a neuropsychological evaluation to assess any consequences of past head trauma and to rule out complications of other diseases if such evaluation is recommended by the psychotherapist. Attorney for the [plaintiff] and the [guardian ad litem] shall have access to these professionals, their treatment recommendations and [the defendant's] compliance with these recommendations, including making and keeping appointments and filling and taking prescriptions prescribed by the aforesaid professionals. The [defendant] shall execute appropriate authorizations to [the plaintiff's] attorney and the [guardian ad litem] to obtain such information."

The defendant argues that the court's orders violate state and federal policies against the dissemination of

mental health records. Specifically, the defendant contends that the court's order "permitting unrestricted access to all of these treaters, and to their records, by [the plaintiff's] counsel and by the [guardian ad litem], and ordering the defendant to execute releases for that purpose, without any prior showing of need and without any further court order, would appear to be an unprecedented invasion of the relationship between the defendant and his therapists. This order of unlimited disclosure, moreover, is within the context of other orders which compel the defendant to engage such therapists as a condition of contact with his children."

At the outset, we note that the defendant's argument misconstrues the scope of the court's order. We do not agree that the order pertaining to dissemination of information concerning the defendant's compliance with treatment allows for "unrestricted access" to the "treaters" and "unlimited disclosure" by them of his mental health records. Rather, the court's order is concerned solely with the procedure that shall occur if and after the issue of his unsupervised visitation with either of the children is presented to the court. If the issue of unsupervised visitation is not presented to the court, then the defendant is not required to provide the plaintiff's attorney or the guardian ad litem with access to his treating mental health professionals and their records. The court has provided the defendant with notice of the procedure to be followed and what he has to do, i.e., a "road map" of evidence it deems necessary for any hearing on unsupervised visitation. The focus of the order is on information necessary to determine if it is in the best interests of the children for the defendant to have unsupervised visitation and in part that question is to be answered by the professionals engaged by the defendant. To prepare for a hearing on any motion for unsupervised visitation and to determine whether to support or oppose any such motion, the

plaintiff and the guardian ad litem reasonably require information about the defendant's then current mental health, including but not limited to the status of his apparent delusional disorder. The court's order narrowly tailors disclosure to the plaintiff's attorney and the guardian ad litem to information about issues likely to arise in connection with any motion for unsupervised visitation filed by the defendant. Furthermore, the order does not compel, as the defendant contends, the defendant "to engage such therapists as a condition of contact with his children." To the contrary, the court's order currently provides the defendant with supervised visitation with his children.

Although the defendant cites a number of statutory provisions, including General Statutes §§ 52-146c, 52-146d, 52-146e, 52-146q and 52-146s, and 42 U.S.C. §§ 1320d-5 and 1320d-6, in support of his argument that the court's order violates public policy, we note that the defendant makes no mention of the numerous exceptions to those statutory protections. See, e.g., General Statutes §§ 52-146c (c) (1), 52-146f, 52-146q (c) (3) and 52-146s (c); 45 C.F.R. § 164.512 (e). Specifically, § 52-146c (c) provides in relevant part: "Consent of the person [who consults a psychologist for purposes of diagnosis or treatment] shall not be required for the disclosure of such person's communications: (1) If a judge finds that any person after having been informed that the communications would not be privileged, has made the communications to a psychologist in the course of a psychological examination ordered by the court, provided the communications shall be admissible only on issues involving the person's psychological condition . . . ."

The court's order concerning unsupervised visitation is prospective in nature, requiring the defendant to cause the disclosure of the specified information to the plaintiff's attorney and the guardian ad litem only in

the event that the issue of his unsupervised visitation with either or both of the children is presented to the court. In light of the defendant's history, mental health issues and behavior, and through its order, the court has put the defendant on notice of what it will expect from him and his treating professionals in any court proceeding in which his unsupervised visitation with the children is considered. Therefore, the defendant is on notice that his future communications with his treating professionals will not be protected by any statutory or common-law privileges under such circumstances. The information encompassed by the court's order clearly is relevant to any consideration of unsupervised visitation. See General Statutes § 46b-56 (c). Accordingly, we determine that the court did not abuse its discretion in entering such an order.

The judgment is affirmed.

In this opinion the other judges concurred.