# RICHARD BUEHLER *v.* LILACH BUEHLER
# (AC 33356)

Beach, Alvord and Espinosa, Js.

Argued May 31—officially released September 11, 2012

*Campbell D. Barrett*, with whom were *Jon T. Kukucka*, and, on the brief, *C. Michael Budlong*, for the appellant (plaintiff).

*Charles W. Fleischmann*, for the appellee (defendant).

*Opinion*

ALVORD, J. In this domestic relations matter transferred to the Regional Family Trial Docket at Middletown from the Stamford-Norwalk judicial district, the plaintiff, Richard Buehler, appeals from several postjudgment orders of the trial court rendered in favor of the defendant, Lilach Buehler. Specifically, he claims that the trial court improperly (1) acted without subject matter jurisdiction by entering a postjudgment order awarding the defendant the rental income generated by the former marital residence, (2) found him in contempt of court after he ceased making mortgage payments

following the court's decision to allow the parties to place the marital residence on the rental market, and (3) denied his motion to modify and to order that the former marital residence immediately be placed back on the market.[1] We affirm the decision of the trial court denying the plaintiff's motion to modify, however, we agree with the plaintiff that the trial court acted without subject matter jurisdiction by improperly assigning property postjudgment when it awarded the defendant all of the rental income generated by the marital residence. Therefore, we determine that the court improperly found the plaintiff in contempt with respect to his failure to make monthly mortgage payments because the mortgage was being paid out of the rental income generated by the marital residence.[2] Accordingly, we reverse in part the judgment of the trial court, vacate the arrearage finding of April 7, 2011, and remand the case for a new determination of the arrearage consistent with this opinion.

The following facts, as stated in this court's decision affirming the judgment of dissolution rendered by the trial court; *Buehler* v. *Buehler*, 117 Conn. App. 304, 306–308, 978 A.2d 1141 (2009); are relevant to our disposition of the plaintiff's current, postjudgment appeal. "The parties were married on September 7, 1997, and have three minor children. . . . On November 14, 2006, the plaintiff initiated dissolution of marriage proceedings by service of summons and complaint on the defendant. On June 4, 2008, the court, *Gordon, J.*, rendered judgment dissolving the parties' marriage on the ground

---

[1] The plaintiff also argues that the court abused its discretion by entering remedial orders that consume approximately 95 percent of his gross income. In light of our decision to vacate the arrearage award and remand for recalculation, we need not address this claim.

[2] There is a mortgage and an equity line of credit on the marital residence. For clarity and convenience, we refer to the mortgage and equity line of credit as the mortgage throughout this opinion.

that it had broken down irretrievably and that reconciliation was not a possibility. After a lengthy discussion of its factual findings, the court issued the following orders: '[T]he defendant wife . . . shall have sole legal and physical custody of the minor children. She shall have sole decision-making power regarding all matters affecting the health, education and welfare of the children, which is to be read broadly . . . . All parenting time between [the plaintiff] and the children shall be supervised. . . .

" '[The defendant] is awarded $400 per week as child support. . . . [The defendant] is awarded alimony in the amount of $25,000 per year . . . . [The plaintiff] shall pay approximately $196, or one half, of the COBRA[3] cost for [the defendant's] health insurance. . . . Until the [marital home] is sold, each of the parties shall be responsible for one half of the mortgage payment, which is to be paid promptly on the first of each month. . . . *The court retains jurisdiction regarding the sale of the house.* . . .

" 'The marital home . . . currently on the market, shall continue on the market. The coordination of the sale, the broker, etc., shall be [the defendant's] responsibility. Each of the parties is ordered to cooperate regarding the sale of the property and the asking price for the property and to cooperate with the broker. If there is any dispute, [the defendant] can select the broker and set the price after consultation with [the plaintiff]. Until the property is sold, [the defendant] shall have sole possession and exclusive use of the property. Upon the closing, there will be deductions for all of the normal and customary closing costs . . . . Then, it shall be divided as follows from the joint proceeds: to [the defendant], the first $95,000 to repay the loan which

[3] See the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161 through 1168.

saved the house. Then, to [the defendant], $12,000 to pay off the balance on her car. Then, to [the defendant] an amount equal to the credit card debt which she incurred from the time of the separation to February 27, 2007. Then, the fees for the guardian ad litem and the attorney for the guardian ad litem. These amounts are to be paid off of the top of the proceeds. Then the balance is to be divided between the parties equally. But from [the plaintiff's] side, shall first be subtracted $65,000 to be paid to [the defendant], which represents her share in the funds which he appropriated out of their accounts before filing this action.' " (Emphasis in original.) Id.

On June 13, 2008, the defendant filed a motion for contempt arguing that the plaintiff failed to make timely mortgage, alimony and support payments in accordance with the June 4, 2008 order of the court. The court held a hearing on June 24, 2008, and found the plaintiff in wilful contempt of court. The court also passed title in the marital home to the defendant to preserve the asset and to effectuate its sale. Id., 309–10. The plaintiff appealed the court's orders to this court, however, this court determined that the plaintiff did not appeal timely the issues relating to the sale of the home and dismissed the appeal with regard to those issues. Id., 310–11.

On August 27, 2008, the defendant filed a postjudgment motion for modification with respect to renting the marital residence. In her motion for modification, the defendant alleged the following: "The defendant represents that there has been a significant change in circumstances in that there have been no offers made on the home, the plaintiff has failed and refused to pay his share of the monthly mortgage payments for the months of July and August, 2008, and the September mortgage payment is soon approaching, and that the defendant's financial situation is deteriorating in that she can no longer afford to pay all of the aforementioned

mortgage payments, and will face a foreclosure action once again.

"Wherefore, the defendant moves that the aforementioned order be modified so that the former marital residence may be placed on the market for rent, so that the anticipated monthly rent will be sufficient to pay the monthly mortgage payments, which will alleviate the financial stress and prevent the marital residence from being placed once again into foreclosure, dissipating all of the assets of the defendant." The court heard the parties on the motion for modification on September 23, 2008, and, at the hearing's conclusion, the court stated: "The motion for modification regarding the sale is granted."

On May 3, 2010, the plaintiff filed a motion for modification requesting "[t]hat the court order [the] defendant to pay [the] plaintiff his equitable one half share of the rental income, retroactive to May 25, 2009, and any deposits or other payments received related to the rental of the marital residence less [the] plaintiff's one half portion of mortgage payments . . . [and] [t]hat the defendant be ordered to place the marital residence back on the market immediately."

On June 11, 2010, the defendant filed a motion for contempt alleging, inter alia, that the plaintiff failed to: pay one half of the defendant's expense for COBRA, set up a direct deposit so that payments for the benefit of the children could be made electronically, pay one half of the children's unreimbursed medical expenses, pay one half of the expenses of the children's extracurricular activities, provide a copy of his 2006 tax return to the defendant and to pay to the defendant one half of the 2006 tax refund, maintain life insurance with the defendant as the trustee beneficiary and pay in full his one half of the outstanding mortgage payments and taxes.

A hearing on these motions was held ten months later on April 6 and 7, 2011.[4] In a ruling from the bench, the court granted the defendant's motion for contempt with regard to the COBRA expenses, the children's extracurricular activities, the direct deposit account and the mortgage payments, finding an arrearage in the amount of $69,172 plus judgment interest. The court ordered that the plaintiff pay an additional $1660 per month on the arrearage subject to wage withholding. Additionally, the court awarded the defendant $1000 in sanctions due to the plaintiff's failure to appear at a deposition. The court also awarded the defendant $32,197 in attorney's fees, which would "come off [the plaintiff's] share that is due and payable at the time of the closing [after the sale of the marital residence]." The court denied the plaintiff's May 3, 2010 motion for modification, stating: "When you come into this court and tell me that you are paying one half of the mortgages on the property that's rented [and] stand ready to contribute, then and only then should you be entitled to share in anything. But certainly, given the fact that you have wilfully not paid it, without any permission from the court, you don't stand here with (a) clean hands or (b) on equitable grounds, because as I said before, the only reason anybody's in this pickle is because of your wilful contempt, and I'm not going to allow you to profit by it." This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first contends that the court improperly acted without subject matter jurisdiction by entering a postjudgment order on April 7, 2011, awarding the defendant the rental income generated by the former marital residence. We agree.

---

[4] The court also heard argument from the parties on two motions for contempt filed by the plaintiff.

Our Supreme Court recently has restated the well settled rule that "[t]he subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Keller* v. *Beckenstein*, 305 Conn. 523, 531–32, 46 A.3d 102 (2012). "[B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Lynch* v. *Lynch*, 135 Conn. App. 40, 55, 43 A.3d 667 (2012).

"The court's judgment in an action for dissolution of a marriage is final and binding upon the parties, where no appeal is taken therefrom, unless and to the extent that statutes, the common law or rules of court permit the setting aside or modification of that judgment. . . . General Statutes § 46b-86 (a) provides in relevant part: Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court . . . . This section shall not apply to [property] assignments under section 46b-81 . . . . *The statute, therefore, deprives the Superior Court of continuing jurisdiction over that portion of a dissolution judgment providing for the assignment of property of one party to the other party under General Statutes § 46b-81. . . .* Although the court has jurisdiction to assign property in connection with § 46b-81, that assignment is not modifiable." (Citations omitted; emphasis added; internal quotation marks omitted.) *Santoro* v. *Santoro*, 70 Conn. App. 212, 216–17, 797 A.2d 592 (2002).

At the time of the judgment of dissolution, the court ordered that the marital residence be sold. By awarding the defendant all of the rental income from the marital

residence, on April 7, 2011, the court made an improper postjudgment property assignment in violation of § 46b-86 (a). The defendant argues that, even if there was an improper postjudgment property assignment, the plaintiff did not timely appeal the court's determination regarding allocation of the rental income. She contends that the court "intended all along that the defendant receive the income" and, therefore, we should consider the date of the court's ruling allowing the defendant to keep all of the rental income to be September 23, 2008. The defendant draws our attention to the court's statement at the April 7, 2011 hearing that it had made such a ruling on September 23, 2008.[5]

After careful review of the record, we can find no transcript or memorandum supporting the contention that the court made any such ruling on September 23, 2008. On September 23, 2008, the court simply stated: "The motion for modification regarding the sale is granted." We therefore consider April 7, 2011, to be the date of the court's ruling on allocation of the rental income, making the plaintiff's appeal of this issue timely. Accordingly, we reach the merits of this claim and determine that the court acted without authority in assigning the rental income wholly to the defendant and vacate that order. We remand for a hearing regarding the amount of net rental income owed to the plaintiff, taking into account the agreed upon payment of the mortgage, costs, taxes and maintenance of the marital residence, in light of the dissolution orders regarding this property.

---

[5] The following colloquy took place on April 7, 2011:

"[The Plaintiff]: [W]ith all due respect, Your Honor, nobody gave the defendant permission to . . . collect all the rent.

"The Court: I did. You asked, I did. At the time of the hearing, Mr. Buehler, you made the same request, shouldn't we split it, and I said no.

"[The Plaintiff]: I don't recall that."

## II

The plaintiff next argues that the court improperly found him in contempt of court after he ceased making mortgage payments to the defendant. Specifically, he argues that the court's decision allowing the defendant to rent the marital property was predicated on the use of the rental income to pay the mortgage. Thus, he argues that the court's decision, to allow the rental of the marital residence, negated the order that he pay one half of the mortgage. To the extent that the court still required him to pay one half of the monthly mortgage, the plaintiff argues that the court's order permitting rental of the marital residence was ambiguous and that, therefore, the court improperly held him in contempt for failing to make those payments. We agree with the plaintiff that the court's order was ambiguous.

"[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding. . . .

"Civil contempt is committed when a person violates an order of court which requires that person in *specific and definite language* to do or refrain from doing an act or series of acts. . . . Whether an order is sufficiently clear and unambiguous is a necessary prerequisite for a finding of contempt because [t]he contempt

remedy is particularly harsh . . . and may be founded *solely* upon some clear and express direction of the court. . . . One cannot be placed in contempt for failure to read the court's mind. . . . This is a long-standing tenet of the law of contempt. . . . It is also logically sound that a person must not be found in contempt of a court order when ambiguity either renders compliance with the order impossible, because it is not clear enough to put a reasonable person on notice of what is required for compliance, or makes the order susceptible to a court's arbitrary interpretation of whether a party is in compliance with the order." (Citations omitted; emphasis in original; internal quotation marks omitted.) *In re Leah S.*, 284 Conn. 685, 693–95, 935 A.2d 1021 (2007).

We first must examine the court's decision on the modification motion. "The interpretation of a trial court's judgment presents a question of law over which our review is plenary. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole." (Citation omitted; internal quotation marks omitted.) *Sosin* v. *Sosin*, 300 Conn. 205, 217–18, 14 A.3d 307 (2011).

The defendant specifically represented to the court that she would use the rental moneys to pay the mortgage on the marital residence in her motion to modify. Further, she testified: "I've been looking to possibly try and rent the house out in order *to be able to cover the mortgage payments* and I've spoken with several brokers who believe that this is a very good idea because the rental market is actually a whole lot better

than the sale market right now." It was on this basis that the plaintiff consented to the defendant's placing of the marital residence on the rental market at the September 23, 2008 hearing. He further testified that it was his understanding that the net rental income that he collected could be credited against his then owing arrearage.[6]

In granting the motion, the court said: "The motion for modification regarding the sale is granted." The court never stated that it still required the plaintiff to pay his one half of the monthly mortgage despite the expectation that the entirety of the parties' mortgage obligation would be satisfied by rental income. Accordingly, the court improperly held the plaintiff in contempt on the grounds that he failed to pay his portion of the mortgage. We therefore vacate the current arrearage order and remand the case to the trial court for a hearing to determine the appropriate arrearage amount and the appropriate amount of attorney's fees owed by the plaintiff to the defendant with respect to the remaining contempt findings.[7]

---

[6] The following colloquy took place between the plaintiff and his appointed counsel at the September 23, 2008 hearing:

"[The Plaintiff's Counsel]: Is there a manner in which you could pay this amount to your ex-wife?

"[The Plaintiff]: Yes.

"[The Plaintiff's Counsel]: And how would you suggest to pay that?

"[The Plaintiff]: I would suggest, if need be, it's my understanding that there is a renter who is available to rent the marital residence and from what I understand, through the testimony of Mrs. Buehler, that the rent received would be somewhere in the neighborhood of $6800. That is significantly more than what's owed each month on the mortgage payment, therefore leaving a surplus somewhere in the neighborhood of $3000 and I would, I had suggested applying my portion of that surplus towards the arrearage."

The plaintiff's counsel also argued later to the court: "I think the rental could be a bonanza for both parties . . . ."

[7] We note that our determination, that the court improperly found the plaintiff in contempt regarding his nonpayment of the mortgage, has no bearing on the court's findings of contempt regarding any other matters.

## III

Finally, the plaintiff claims that the trial court improperly failed to effectuate its original dissolution judgment by denying the plaintiff's motion to modify with respect to his prayer for relief that the court order the marital residence to be sold immediately. We disagree.

We first note that the propriety of the court's original decision to place the marital residence on the rental market is not before us because the plaintiff did not timely appeal the September 23, 2008 granting of the defendant's motion to modify. We therefore review the court's decision denying the plaintiff's motion to modify under the abuse of discretion standard. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Therefore, to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Stancuna* v. *Stancuna*, 135 Conn. App. 349, 353, 41 A.3d 1156 (2012).

While this court appreciates that three years is a lengthy period of time for the home to be rented under these postjudgment circumstances, "[w]e have recognized that it is within the equitable powers of the trial court to fashion whatever orders [are] required to protect the integrity of [its original] judgment." (Internal quotation marks omitted.) *Roberts* v. *Roberts*, 32 Conn. App. 465, 471, 629 A.2d 1160 (1993). Prior to the court's granting of the defendant's August 27, 2008 motion to modify, which allowed the placement of the marital residence on the rental market, the house was at risk of foreclosure due to the fact that the plaintiff failed to pay his portion of the mortgage for the two months prior. In order to preserve the equity in the house, the court allowed the marital residence to be rented so that the mortgage would be paid each month.

We cannot say that the court abused its discretion by denying the plaintiff's May 3, 2010 motion to modify, which requested that the marital residence immediately be placed for sale at that time. The court determined that the only reason the mortgage was being paid was because the house was being rented. The plaintiff presented no evidence to the court that the parties would be able to pay the mortgage without the rental income generated by the marital residence at the time he made his motion to modify. The plaintiff also failed to present evidence that the house simultaneously could be rented and relisted for sale. Finally, the plaintiff provided the court with no information regarding any improvement, since 2008, in the applicable residential sales market. Accordingly, we cannot conclude that the court improperly denied the plaintiff's motion to modify.

The judgment is reversed as to the award of rental income to the defendant from the marital residence; the judgment of contempt is reversed in part as to the plaintiff's failure to pay one half of the mortgage, the current arrearage is vacated, and the case is remanded

with direction to determine the proper amount of arrearage and attorney's fees consistent with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.