******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ERIC P. SOUSA *v.* DONNA M. SOUSA
(AC 36604)

DiPentima, C. J., and Keller and Flynn, Js.

*Argued March 2—officially released June 2, 2015*

(Appeal from Superior Court, judicial district of Waterbury, Resha, J. [modification order]; Hon. Lloyd Cutsumpas, judge trial referee [motions to vacate, motion for attorney's fees].)

*C. Michael Budlong*, with whom were *Brandon B. Fontaine*, and, on the brief, *Jon T. Kukucka*, for the appellant (defendant).

*William J. Ward*, for the appellee (plaintiff).

*Opinion*

KELLER, J. The trial court previously rendered judgment dissolving the marriage of the plaintiff, Eric P. Sousa, and the defendant, Donna M. Sousa. The defendant now appeals from the judgment of the trial court denying two motions to vacate a prior judgment that modified, by stipulation, a portion of the judgment of dissolution that ordered that the plaintiff's pension benefits be divided equally between the parties. She claims that the court erred by denying her first motion to vacate because it erroneously concluded that she did not meet her burden to prove by clear and convincing evidence that the plaintiff fraudulently failed to disclose the accurate value of his employee pension plan in his financial affidavit. In addition, she claims that the court erred by denying her second motion to vacate because it erroneously concluded that it had subject matter jurisdiction to modify the order in the judgment of dissolution dividing the plaintiff's pension benefits equally between the parties. We reverse the judgment of the court as to its denial of her second motion to vacate for lack of subject matter jurisdiction, which also renders the court's denial of her first motion to vacate void.

The following facts, as found by the court, and procedural history are relevant here. "After a fourteen year marriage, the parties were divorced in an uncontested proceeding on December 19, 2001. Both parties were represented by counsel. The parties exchanged extensive discovery and participated [with] a special master pretrial.

"A separation agreement was prepared and executed which, among other things, provided that the plaintiff's borough of Naugatuck police pension be divided equally via a Qualified Domestic Relations Order (QDRO).[1] The QDRO was prepared by the defendant's counsel, who received information about the pension from the plaintiff's counsel . . . . A further provision in the agreement called for the plaintiff to pay periodic alimony of $130 per week, subject to termination at the end of five years, or earlier upon the [defendant's] cohabitation or the death of either party.

"Approximately two years after the divorce, the defendant began cohabitating with Tom Spivak, now her husband. Upon becoming aware of the situation, the plaintiff informed the defendant that she was in violation of their divorce agreement and that he would be seeking to terminate the alimony. After some discussion, the defendant informed the plaintiff that she desired to finish her education leading to a teaching degree, higher income and [her own] pension but would need the alimony payments in order to do so. The defendant proposed to waive her right to her share of the plaintiff's pension in exchange for a continuation of the alimony for three years despite her admitted cohabita-

tion. The plaintiff agreed to the proposal and continued to pay the alimony. . . .

"After the conclusion of the five year alimony period established by the terms of the separation agreement, the plaintiff filed a motion to modify judgment in accordance with stipulation . . . to have the full pension returned to him. By agreement, his counsel prepared the motion and the accompanying stipulation, which was signed by both parties and submitted to the court for approval. Both parties appeared in court before Judge Robert Resha on January 2, 2007, the plaintiff with counsel and the defendant appear[ing] as a self-represented litigant.

"During the hearing, Judge Resha canvassed the defendant, asking if she had reviewed the terms and conditions of the stipulation with a family relations officer, to which she replied in the affirmative. The terms of the stipulation were then read into the record. The judge then asked her why she was entering into this agreement, which waived her right to receive any portion of the plaintiff's pension. To her credit, the defendant truthfully replied that it was her idea, pursuant to an agreement entered into three years earlier that provided that the plaintiff would not cease alimony payments and she would relinquish her portion of his pension.

"Judge Resha further asked the defendant if she understood that once she relinquishe[d] any right to the pension it [would] not be able to be addressed by the court in the future—that it would be [the plaintiff's] from that point on. She once again answered in the affirmative. The judge then asked if she was comfortable entering into the agreement without the benefit of an attorney. Again she answered in the affirmative. The court then made a finding that the stipulation was warranted, accepted it and made it a final order of the court. No appeal was ever taken.

"Four years after the entry of the order, [on] March 31, 2011, the defendant filed her [first] motion to open and vacate judgment . . . . In that motion, the defendant allege[d] that the modification [in 2007] was secured by fraud on the part of the plaintiff. On November 2, 2011, the defendant filed a [second] motion to vacate the January 2, 2007 order . . . this time claiming that the court [in 2007] lacked jurisdiction to enter such an order. On November 9, 2011, the defendant filed a motion for counsel fees postjudgment . . . . The matter was heard by the court [*Hon. Lloyd Cutsumpas*, judge trial referee] on January 14, 2014. Both parties were represented by competent counsel, who filed well written posttrial briefs and zealously represented their clients as required by the oath of their office." (Footnotes altered.)

On February 25, 2014, the court issued a memoran-

dum of decision denying all three of the defendant's motions.[2] Regarding her first motion to vacate, the court emphasized that the defendant had the burden to prove by clear and convincing evidence that the plaintiff committed fraud by allegedly failing to fully and accurately disclose the value of his pension plan in his financial affidavit. The court determined that the defendant failed to meet her burden to prove that the value of the plaintiff's pension plan listed in his financial affidavit was inaccurate or that he knew that the value was inaccurate. Furthermore, the court noted that portions of the defendant's testimony "[were] conflicting and lacked credibility," and that there was no evidence in the record indicating that, "had the facts been known as the defendant claims, the result of a new hearing would have been different." For the foregoing reasons, the court concluded that the defendant failed to demonstrate, by clear and convincing evidence, that the plaintiff committed fraud. As a result, the court denied the defendant's first motion to vacate.

Regarding her second motion to vacate, the court rejected her argument that, in 2007, it lacked subject matter jurisdiction to modify the order in the judgment of dissolution dividing the plaintiff's pension benefits equally between the parties. The court quoted General Statutes § 52-212a,[3] which provides in relevant part that "a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed." Section 52-212a further provides in relevant part that "[t]he parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court . . . ." Guided by that language, the court determined that, although the order modifying the judgment of dissolution was entered well over four months after the court rendered the judgment of dissolution, the parties had acquiesced to the court's jurisdiction by submitting a stipulation requesting a modification. Furthermore, the court noted that Judge Resha had canvassed the defendant as to the stipulation, that the defendant had stated her intention to relinquish her claim to the plaintiff's pension benefits, that the defendant had broached the idea of modifying the judgment of dissolution in this way, and that the defendant was comfortable entering into the postdissolution agreement without legal representation. For the foregoing reasons, the court concluded that both parties had waived the four month requirement set forth in § 52-212a and submitted to the jurisdiction of the court. As a result, the court denied the defendant's second motion to vacate. This appeal followed.

We first consider the defendant's claim that the court improperly denied her second motion to vacate because it is dispositive of this appeal. Specifically, she asserts that the court erred in concluding that, in 2007, it had

subject matter jurisdiction to modify the order in the judgment of dissolution dividing the plaintiff's pension benefits equally between the parties. In support of her claim, she cites multiple authorities setting forth the well established principle that, pursuant to General Statutes § 46b-81, a court must enter property distribution orders at the time of dissolution and, generally, cannot subsequently modify those orders. Furthermore, she asserts that the court erred in relying on § 52-212a to establish its jurisdiction because that statute applies solely to motions to open, and the motion filed by the plaintiff in 2007, requesting that the court modify the judgment of dissolution pursuant to the parties' stipulation, was considered to be a motion to modify. We agree with her first argument and conclude that the court lacked subject matter jurisdiction to modify the order in the judgment of dissolution dividing the plaintiff's pension benefits equally between the parties.

We begin by setting forth the relevant standard of review. "[B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Buehler* v. *Buehler*, 138 Conn. App. 63, 70, 50 A.3d 372 (2012).

It is well settled that "[c]ourts have no inherent power to transfer property from one spouse to another; instead, that power must rest upon an enabling statute. . . . The court's authority to transfer property appurtenant to a dissolution proceeding rests on . . . § 46b-81.[4] . . . Accordingly, the court's authority to divide the personal property of the parties, pursuant to § 46b-81, must be exercised, if at all, at the time that it renders judgment dissolving the marriage. . . . General Statutes § 46b-86 (a)[5] deprives the Superior Court of continuing jurisdiction over that portion of a dissolution judgment providing for the assignment of property of one party to the other party under . . . § 46b-81. . . . A court, therefore, does not have the authority to modify the division of property once the dissolution becomes final." (Citations omitted; footnotes added; internal quotation marks omitted.) *Stechel* v. *Foster*, 125 Conn. App. 441, 446–47, 8 A.3d 545 (2010), cert. denied, 300 Conn. 904, 12 A.3d 572 (2011). A property distribution order may be modified only if a party files a motion to open requesting a modification within four months of the judgment of dissolution or, if the motion is filed on the basis of fraud, promptly upon the discovery of fraud. See General Statutes § 52-212a; *Konefal* v. *Konefal*, 107 Conn. App. 354, 359 n.5, 945 A.2d 484, cert. denied, 288 Conn. 902, 952 A.2d 810 (2008).

Here, because pension benefits are considered to be property distributable under § 46b-81 (a); see *Cifaldi* v. *Cifaldi*, 118 Conn. App. 325, 331, 983 A.2d 293 (2009); the court, at the time of dissolution, awarded the defendant one half of the plaintiff's pension benefits, pursu-

ant to the parties' separation agreement, which it incorporated into the judgment of dissolution. Neither party filed a motion to open, either within four months of the judgment of dissolution or on the basis of fraud, requesting a modification of the order regarding the plaintiff's pension benefits. Therefore, by subsequently modifying the order dividing the plaintiff's pension benefits equally between the parties, the court acted outside of its jurisdictional authority under § 46b-86 (a). The fact that the parties submitted a stipulation requesting that the court modify the order in the judgment of dissolution regarding the pension benefits has no bearing on the court's lack of jurisdiction to modify that order. See *Parisi* v. *Parisi*, 140 Conn. App. 81, 91, 58 A.3d 327 (2013) (noting that court has no jurisdiction to modify property distribution provision in separation agreement incorporated into judgment of dissolution), rev'd in part on other grounds, 315 Conn. 370, 107 A.3d 920 (2015).[6]

Furthermore, the court erred in relying on § 52-212a to determine that it had subject matter jurisdiction. "[Section] 52-212a . . . provides in relevant part: Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . . This statutory limitation operates as a constraint, not on the trial court's jurisdictional authority, but on its substantive authority to adjudicate the merits of the case before it." (Internal quotation marks omitted.) *Ramos* v. *J.J. Mottes Co.*, 150 Conn. App. 842, 845, 93 A.3d 624 (2014). Section 52-212a does not confer jurisdiction on a court; rather, it permits parties to waive the statutory deadline imposed on the filing of motions to open and to submit to jurisdiction otherwise conferred on a court by statute. See *Kim* v. *Magnotta*, 249 Conn. 94, 104, 733 A.2d 809 (1999). As we discussed previously in this opinion, the court did not have subject matter jurisdiction to enter the modified order requested by the parties through their stipulation. Therefore, the court had no subject matter jurisdiction for the parties to submit to before considering the substantive provisions of § 52-212a.

It appears that the plaintiff presents three arguments in response to the defendant's subject matter jurisdiction claim. First, he asserts that the court had jurisdiction, pursuant to General Statutes § 46b-82[7] regarding alimony orders, to modify the order in the judgment of dissolution concerning the plaintiff's pension benefits. According to the plaintiff, although the parties' stipulation to their proposed modification did not expressly seek any modification of alimony, the stipulation contemplated that he would not seek to enforce the order in the judgment of dissolution concerning alimony in

exchange for the defendant's relinquishment of her right to one half of his pension benefits.[8] He argues that, because the parties' stipulation inherently involved alimony, the court had subject matter jurisdiction to enter the order modifying the distribution of his pension benefits. We reject this argument because we conclude that § 46b-82 has no bearing on the jurisdictional issue before us. In addition, by the time the parties had presented their proposed modification to the court in 2007, the five year term of the alimony order, with which the plaintiff had complied, had expired and there was nothing to modify with respect to alimony.

Second, the plaintiff asserts that a separation agreement incorporated into a judgment of dissolution is to be considered and construed as a contract. Further, he argues that he conferred a benefit on the defendant by forgoing his right to terminate alimony payments once she began cohabitating with her current husband and that he detrimentally relied on the court's order modifying the parties' judgment of dissolution. The plaintiff does not indicate how this detrimental reliance argument is relevant to the court's lack of subject matter jurisdiction to enter a postdissolution order modifying the distribution of the plaintiff's pension benefits and, therefore, we reject it.

Last, citing *Urban Redevelopment Commission* v. *Katsetos*, 86 Conn. App. 236, 860 A.2d 1233 (2004), cert. denied, 272 Conn. 919, 866 A.2d 1289 (2005), the plaintiff asserts that the doctrine of finality of judgments precludes the defendant's claim regarding the court's lack of subject matter jurisdiction. We disagree.

"It often is stated that a challenge to subject matter jurisdiction can be raised at any time and that [o]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case. . . . Our Supreme Court, however, has stated that there are boundaries to challenges concerning the issue of subject matter jurisdiction. As we have only recently observed . . . [t]he modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal. . . . Under this rationale, at least where the lack of jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if he did have such an opportunity, whether there are strong policy reasons for giving him a second opportunity to do so." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 240–41.

The plaintiff urges us to apply *Urban Redevelopment Commission* and conclude that, under the circumstances of this case, the defendant should be precluded from asserting any claim regarding the court's lack of subject matter jurisdiction. We are not persuaded. *Urban Redevelopment Commission* instructs us to consider the factors it cited only when a court's "lack of subject matter jurisdiction is not entirely obvious . . . ." (Internal quotation marks omitted.) Id., 241. Here, it is entirely obvious that § 46b-86 (a) unequivocally deprives a court of subject matter jurisdiction to enter postdissolution orders modifying property distribution provisions in a judgment of dissolution. Therefore, we need not apply the factors set forth in *Urban Redevelopment Commission* to determine whether the doctrine of finality of judgments precludes the defendant's subject matter jurisdiction claim. Cf. id., 243 (lack of jurisdiction not entirely obvious); see also *Torrington* v. *Zoning Commission*, 261 Conn. 759, 769–70, 806 A.2d 1020 (2002) (same); *In re Shamika F.*, 256 Conn. 383, 408, 773 A.2d 347 (2001) (same).

For the foregoing reasons, the court erred by denying the defendant's second motion to vacate. Furthermore, the denial of the defendant's first motion to vacate must be vacated. The trial court lacked subject matter jurisdiction when it initially modified the order distributing the plaintiff's pension benefits, and, consequently, the ruling on the first motion to vacate that modification is void. "It is well established that a court is without power to render a judgment if it lacks jurisdiction and that everything done under the judicial process of courts not having jurisdiction is, ipso facto, void." (Internal quotation marks omitted.) *Koennicke* v. *Maiorano*, 43 Conn. App. 1, 25, 682 A.2d 1046 (1996).

The judgment is reversed in part and the case is remanded with direction to grant the defendant's second motion to vacate; the judgment is vacated as to the denial of the defendant's first motion to vacate; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The court incorporated by reference the parties' separation agreement into the judgment of dissolution after concluding that the agreement was fair and equitable.

[2] Although the defendant listed on her appeal form the court's denial of her motion for attorney's fees as a judgment from which the appeal was taken, she neither raised nor adequately briefed a claim concerning the court's denial of that motion in her appellate brief. At the conclusion of her brief she merely requested that this court order the trial court to reconsider her motion for attorney's fees on remand if this court reversed the trial court's denial of her motions to vacate. She did not cite any legal authority or provide any analysis in support of her request. Therefore, we decline to review her request on the basis of her failure to brief it adequately. See *Clelford* v. *Bristol*, 150 Conn. App. 229, 233, 90 A.3d 998 (2014).

[3] In its memorandum of decision, the court quoted the language of § 52-212a but mistakenly cited General Statutes § 52-212. It is evident, in the context of the court's analysis in its memorandum of decision, that the court intended to cite § 52-212a.

[4] General Statutes § 46b-81 (a) provides: "At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a

complaint under section 46b-45, the Superior Court may assign to either spouse all or any part of the estate of the other spouse. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either spouse, when in the judgment of the court it is the proper mode to carry the decree into effect."

[5] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support, an order for alimony or support pendente lite or an order requiring either party to maintain life insurance for the other party or a minor child of the parties may, at any time thereafter, be continued, set aside, altered or modified by the court . . . . This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law. . . ."

[6] In further support of our conclusion, we note that this court in *Billings* v. *Billings*, 54 Conn. App. 142, 732 A.2d 814 (1999), in the context of determining whether a provision in the judgment of dissolution was modifiable pursuant to the parties' stipulation, observed that "[t]here is no aspect of law of which we are aware . . . that supports the proposition that two parties cannot, between themselves, modify a property settlement. That, however, does not mean that the trial court may modify it pursuant to § 46b-86 (a)." *Billings* v. *Billings*, supra, 143–44, 151.

[7] General Statutes § 46b-82 provides: "(a) At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order pursuant to subsection (b) of this section or an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. The court may order that a party obtain life insurance as such security unless such party proves, by a preponderance of the evidence, that such insurance is not available to such party, such party is unable to pay the cost of such insurance or such party is uninsurable. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment.

"(b) If the court, following a trial or hearing on the merits, enters an order pursuant to subsection (a) of this section, or section 46b-86, and such order by its terms will terminate only upon the death of either party or the remarriage of the alimony recipient, the court shall articulate with specificity the basis for such order.

"(c) Any postjudgment procedure afforded by chapter 906 shall be available to secure the present and future financial interests of a party in connection with a final order for the periodic payment of alimony."

[8] The stipulation provided in relevant part: "The parties agree that the [plaintiff] shall retain all right, title and interest in his pension . . . . The [defendant] agree[s] to release any interest she may have in the pension and agrees to execute any documents necessary to effectuate this modification."